United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIN LIU,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

Case No. 16-cv-01553-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT; REMANDING ACTION FOR FURTHER PROCEEDINGS**

Re: Dkt. Nos. 14, 21

## INTRODUCTION

Plaintiff Jin Liu ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 14 (Pl.'s Mot.), 21 (Def.'s Mot.). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's Motion and **GRANTS IN PART** Defendant's Cross-Motion for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On March 21, 2013, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on February 8, 2011. AR 157-58. Plaintiff contended he was disabled due to Post Traumatic Stress Disorder ("PTSD"), depression, chronic pain, and back injuries, including lumbar disc disease. AR 70.

Administrative Law Judge ("ALJ") Maxine Benmour conducted a hearing on December 11, 2013 (AR 26-69), and issued a decision denying Plaintiff's application on December 27, 2013.

AR 9-20. Plaintiff sought judicial review of this action before the Honorable Phyllis J. Hamilton. AR 838-39; *see Liu v. Colvin*, 14-cv-01937-PJH (N.D. Cal.). He filed a motion for summary judgment challenging the ALJ's decision, and the parties stipulated to remanding the action for further administrative proceedings. AR 840-42. Judge Hamilton remanded the action on January 30, 2015, with directions for the ALJ to provide Plaintiff with the opportunity for a hearing and to issue a new decision. AR 844-46. Specifically, the court instructed the ALJ to (1) further consider Plaintiff's medically determinable impairments at Steps Two and Three; (2) give further consideration to the treating and non-treating medical opinions of record and state the weight accorded to each along with the supporting rationale; (3) consider third party statements; (4) reconsider Plaintiff's residual functional capacity, determine whether he can perform his past relevant work, and if necessary, obtain assistance of a vocational expert to determine whether Plaintiff can perform jobs that exist in significant numbers in the national economy. *Id.*

The ALJ held a supplemental hearing on September 3, 2015. AR 768-809. Plaintiff and a vocational expert testified at the supplemental hearing. AR 770-809. On December 29, 2015, the ALJ once more denied Plaintiff's claim. AR 688-707. Plaintiff now appeals the denial of benefits. This Order reviews the ALJ's December 19, 2015 decision.

**EVIDENCE**

Plaintiff is a U.S. Army veteran. He spent several years on active duty, and served in the Reserves from 1997 until his discharge in 2011. The AR includes extensive documentation from the U.S. Department of Veterans Affairs ("VA"), including medical records and records from the proceedings in which the VA found Plaintiff was partially disabled as a result of service-connected physical disability. The AR in this matter is voluminous, and the undersigned only identifies the evidence that is germane to the arguments the parties raise here. Unless otherwise indicated, the parties stipulate to the following facts (*see* Pl.'s Sep. Stmt. at ¶¶ 41-42, 73-78, 80-90, Dkt. No. 14-1; Def.'s Sep. Stmt. at 1, Dkt. No. 21-1):

**A. Medical Evidence of Record**

In 2009, Plaintiff's VA treaters interpreted his lumbar spine x-rays as suspicious for lower

thoracic spine disease, S1 degenerative disease, and S1 spina bifida occulta. AR 249, 371. Plaintiff visited the VA pain clinic on a regular basis in 2010; that year he also underwent a "bilateral lumbar radio facet thermocautery," a diagnostic posterior primary ramus block, and he received a corticosteroid injection for spina bifida and low back pain. AR 262-65, 297, 319, 347. In 2011, Plaintiff was prescribed a cane. AR 444-46. In 2012, Plaintiff underwent a bilateral L4-5 and a right L5-S1 facet medial branch block injection. AR 553-54.

The VA determined that Plaintiff is partially disabled as of May 2012 as the result of a service-connected low-back condition (radiculopathy and thoracolumbar spondylosis) and gastroesophageal reflux disease with hiatal hernia. AR 223-25.

Plaintiff has been treated by VA psychiatrist Christine Leyba, M.D., since September 2012. AR 545, 587-90. Dr. Leyba diagnosed Plaintiff with PTSD, which he sustained after seeing a good friend crushed by an armed personnel carrier. AR 546-48. Dr. Leyba prescribed medications to treat Plaintiff's symptoms. AR 519, 547-48.

Dr. Leyba opined that Plaintiff's physical pain was connected to his PTSD symptoms. She wrote that Plaintiff "may be dealing with emotional pain in a somatic manner." AR 517, 548. She also wrote that his physical pain exacerbated his depressive symptoms, concentration and mood problems, and PTSD symptoms, including sleep problems. AR 582 ("In my professional opinion it is more likely than not that Mr. Liu's service connected pain is exacerbating his mental state.")

In April 2013, Dr. Leyba completed a Social Security Administration ("SSA") Short Form Evaluation for Mental Disorders for Plaintiff. AR 587-90. She reported Plaintiff had "poor" ability in several areas of mental functioning, including (1) understanding, remembering and carrying out complex instructions; (2) maintaining concentration, attention and persistence; (3) completing a normal workday and workweek without interruptions from psychologically based symptoms; and (4) responding appropriately to changes in a work setting. AR 590. The SSA Short Form defines "poor" as when "evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." AR 590.

Also in April 2013, Dr. Leyba referred Plaintiff to Dr. Kristi Steh to undergo a full

neuropsychological evaluation. AR 1026-36. Dr. Steh found Plaintiff's attention and concentration ranged from average to impaired, with improved performance as the tasks became more difficult. AR 1029-31. Dr. Steh found Plaintiff's overall cognitive profile was variable, with many of his performances falling below expectation, and noted that Plaintiff's performance appeared to improve as the evaluation progressed and he became more relaxed. AR 1031-32. Dr. Steh did not set forth specific functional limitations but recommended that Plaintiff learn new information in small chunks, allow ample time to learn new material, and break down complex tasks. AR 1034.

In November 2013, Dr. Leyba completed an SSA Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment ("MSS"). AR 651-55. Dr. Leyba opined that Plaintiff had a "substantial loss" of ability to respond appropriately to supervision, co-workers and usual work situations, and a "substantial loss" of ability to deal with changes in a routine work setting. AR 654. She opined Plaintiff had "moderately severe" limitations in nine categories: the ability (1) to understand and remembered detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or proximity to others without being unduly distracted by them; (4) complete a normal workday and workweek; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (9) respond appropriately to changes in the work setting. AR 652-53. The MSS defines "moderately severe" limitations as limitations that "seriously interfere[] with the individual's ability to perform the designated activity, and preclude[] the ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." AR 651.

In April 2014, Dr. Leyba wrote a letter indicating that "[b]ecause of his pain" Plaintiff is "unable to stand or sit for long periods of time. He has not worked for some time because of this. He has tried retraining for a different profession but his disabilities make it impossible for him to

obtain and keep gainful employment. He should be considered unemployable." AR 960.

In November 2014, Plaintiff presented to Dr. Steh for a second neuropsychological evaluation. AR 1106-09. Plaintiff reported significant cognitive difficulties. *Id*. Dr. Steh and Plaintiff "mutually decided to end the evaluation" after Plaintiff indicated he did not feel he would be able to engage in the neuropsychological assessment. AR 1109.

In March 2015, Dr. Leyba wrote in a letter that Plaintiff's "depression is clearly related to his pain for which he is service connected. He has issues with sleep, mood, and concentration from depression. When his pain is worse, his depressive symptoms definitely become worse. In my professional opinion, it is more likely than not that his depression is directly related to his service connected pain issues." AR 955.

In April 2015, Dr. Leyba wrote in a letter that Plaintiff "is followed in our clinic for back problems and depression. Both can impact his ability to manage school work, and he requires accommodation as a disabled student." AR 959. Dr. Leyba opined that Plaintiff needed additional time to take tests, needed to receive presentation materials ahead of time, needed to sit or stand at his discretion, and that it would be helpful for him to use voice recognition software so he did not need to type, as typing was painful for him. *Id.* She opined Plaintiff "cannot take more than 1 class during a term because of concentration issues." AR 959.

**B. Plaintiff's Testimony**

At the December 11, 2013 hearing, Plaintiff testified he was a medical specialist in the U.S. military from 1991 until September 2007, and a chemical specialist from that point until 2011. AR 29. In 1992, he saw his friend killed when an armed personnel carrier rolled over; he attributes his PTSD to this incident. AR 37. Plaintiff fell off a military truck in 2007, injuring his back. AR 31. He injured his back a second time in 2010 when he fell from the top bunk. AR 31. He was on active duty until 1997, in the reserves from 1997 to 2007, and once more on active duty from 2007 to 2011. AR 42. While in the reserves, Plaintiff was called up once a month and two weekends a year. AR 44-45. He also helped with his family's restaurant business. AR 45-46. He otherwise did not work. AR 44-46.

United States District Court
Northern District of California

In 2013, Plaintiff testified he stopped working because his contract with the Army had ended. AR 29; *see also* AR 43 (Plaintiff's attorney noted Plaintiff's separation was due to a reduction in force). In 2015, Plaintiff testified he stopped working because he failed to meet the Army's body and weight standards, he was unable to participate in the physical training, and because of military downsizing. AR 773, 793. He did not look for other work after leaving the Army in February 2011 because he planned to go back to school. AR 773-74.

Plaintiff attended college between 2012 and 2015. AR 35-36. In 2013, he attended classes four days per week in two two-hour segments (7:30-9:30 and 10:00-12:00). AR 55. He did his homework in the afternoons. AR 56. He took a leave of absence in 2013 for twelve weeks. AR 35, 774-75. He quit school permanently after the spring semester of 2015 because he could not keep up in class due to his memory problems. AR 774-77. He estimates he missed school more than five days a month because of anxiety, depression, and pain. AR 790.

At both the December 2011 and the September 3, 2015 hearings, Plaintiff testified he began seeing Dr. Leyba once a month starting in 2012 for his depression. AR 39-40, 48-49, 783. She prescribed Ambien for sleep, Xanax for mood control, and Adderall for concentration. AR 47-48.

At the September 2015 hearing, Plaintiff testified his pain was "mind numbing" and his low back hurt "24/7". AR 31-32, 781-82. He could only sit for 15-20 minutes before his pain became so bad he could not stand it anymore. AR 793. In 2011, Plaintiff began seeing Dr. Myo Chang at the VA; Dr. Chang prescribed Percocet and Oxycontin for his back pain, and recommended physical therapy and chiropractic treatment. AR 32-33; *see also* AR 784 (Dr. Leyba prescribed medication, which helped).

Since 2011, Plaintiff has used a cane prescribed by the VA the majority of the time, even inside his house. AR 781. He would not leave the house without his cane. AR 794. With his cane, he can walk a quarter to a half-mile. AR 794. He can stand for half an hour or so. *Id.*

He testified that he has memory problems and that he regularly has whole days he cannot recall. AR 777. Plaintiff only gets up and dressed three times a week; he stays in bed watching

television most of the day if he does not have appointments. AR 786-87. He does no housework, and he has a driver because he no longer drives. AR 779, 786-87, 792, 794-95.

**C. The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

At the first step, the ALJ must initially determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity between February 8, 2011 and June 30, 2015 (the date Plaintiff was last insured). AR 693.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. *Id.* § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: posttraumatic stress disorder ("PTSD"), lumbar spine degenerative disc disease, personality disorder, obesity, attention deficit hyperactivity disorder ("ADHD"), and depression. AR 693.

---

[1] "Disability" is the "inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equal a "listed impairment." *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id*. § 404.1520(d). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. *Id*. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 694. Specifically, the ALJ found Plaintiff did not meet Listings 1.04 (Disorders of the Spine), 12.04 (Affective Disorders), and 12.06 (Anxiety-related Disorders). *Id*. The ALJ also considered the effects of Plaintiff's obesity. *Id*. The ALJ concluded Plaintiff did not meet Listing 1.04 because later imaging showed normal lumbar spine x-ray. AR 694. With respect to the Listings for mental impairments, the ALJ found Plaintiff did not have at least two "marked" limitations in the relevant criteria. AR 694.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to the most an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. *Id*. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are non-severe. *Id*. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work, with the following exceptions: he could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit for six out of eight hours; could stand and/or walk for two out of eight hours; needed a cane to walk long distances or on uneven terrain; could occasionally climb, balance, stoop, kneel, crouch, and crawl; was limited to simple repetitive tasks with occasional contact with the public; and required additional supervision when learning new tasks and twice an hour for 10 minutes at a time during one hour of training. AR 695-96.

The fourth step of the evaluation process requires that the ALJ determine whether the

claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Here, the ALJ determined Plaintiff could not perform any past relevant work. AR 705.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner meets this burden, the claimant is not disabled and is not entitled to benefits. *Id.* If the Commissioner cannot meet this burden, the claimant is entitled to benefits. *Id.* Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 705-06 (Plaintiff could perform the requirements of occupations such as bench assembler, mail clerk, and merchandise marker).

**D. ALJ's Decision and Plaintiff's Appeal**

On December 29, 2015, the ALJ again issued an unfavorable decision finding that Plaintiff was not disabled. AR 688-707. Pursuant to 20 C.F.R. § 404.984(d), this decision became the final decision of the agency upon remand. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl., Dkt. No. 1. On August 2, 2016, Plaintiff filed the present Motion for Summary Judgment. On November 7, 2016, Defendant filed a Cross-Motion for Summary Judgment.

Plaintiff argues the ALJ applied incorrect legal standards to find that the opinions of Dr. Leyba, his treating physician, were not entitled to controlling weight. Pl.'s Mot. at 4-14. As a

result, Plaintiff argues, the ALJ erred in finding his impairments did not meet or equal a listed impairment, and erred in finding he could perform a limited range of light work. *Id*. at 2-3. Plaintiff also argues the ALJ improperly rejected the opinion of "examining physician" Dr. Brandon. *Id*. at 15. He further argues the ALJ improperly rejected the credibility of his allegations. *Id*. at 15-23. Finally, Plaintiff argues the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *Id*. at 23-25. Defendant argues the ALJ did not err, and the Commissioner's decision should be upheld. *See* Def.'s-Mot.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, SSA*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

**A. Dr. Leyba**

1. SSA Standards for Weighing Opinion of Treating Physician

Physicians opining about a social security claimant's condition "may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)); *see also* 20 C.F.R. § 404.1527(d).

If a treating physician's medical opinion is well-supported and not inconsistent with other substantial evidence in the record, the ALJ must give the treater's opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2); Soc. Sec. Rul. ("SSR") 96-2p. "Not inconsistent" means no other substantial evidence contradicts or conflicts with the treater's opinion. SSR 96-2p. But it is error to give a treater's opinion controlling weight simply because it is from a treating physician, if the opinion is not well supported by medically acceptable diagnostic techniques, or if it is inconsistent with other medical evidence. *Id.* However, to reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state "clear and convincing reasons supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quotation and citation omitted).

2. The ALJ Gave Dr. Leyba's Opinions Only Limited Weight

The ALJ acknowledged the record contained "many opinions from the claimant's treating doctor, Dr. Christine Leyba." AR 702-03 (describing Dr. Leyba's assessments of April 2013, November 2013, April 2014, March 2015, and April 2015).[2] She acknowledged a treating

[2] The ALJ did not find that other medical sources contradicted Dr. Leyba's opinions, and the SSA did not have Plaintiff undergo a mental health examination in connection with his application for disability benefits. Dr. Leyba's opinions thus were uncontradicted. Defendant argues the two State agency physicians who opined that Plaintiff did not have a severe impairment contradict Dr. Leyba's opinions regarding Plaintiff's physical limitations and therefore support the ALJ's decision to give Dr. Leyba's opinions little weight. *See* Def.'s Mot. at 5. This argument fails.

United States District Court
Northern District of California

physician's medical opinion is entitled to "special significance, and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight." AR 703 (citing SSR 96-2p); *cf.* AR 703-04 ("The doctor's opinions are without substantial support from the other evidence of record . . . . Dr. Leyba's opinion . . . is not supported by the objective findings nor those of any other medical source."). The ALJ nevertheless did not afford Dr. Leyba's opinions substantial or controlling weight, and instead only afforded them limited weight. *See* AR 703-04. The ALJ gave limited weight to Dr. Leyba's April 2014 opinion that Plaintiff cannot sit for long periods of time and needs a sit/stand option (AR 960), because as a psychiatrist, Dr. Leyba had not treated Plaintiff for his physical impairments, including his back pain: "[a]s such, her opinion appears to rest at least in part on an assessment of impairments outside of [her] area of expertise." AR 703. The ALJ also gave limited weight to Dr. Leyba's multiple assessments of Plaintiff's mental health limitations because her opinions were not supported by objective medical evidence, including her own treatment notes that showed "many normal mental status examinations" and indicated that Plaintiff's symptoms and functioning improved with treatment. AR 703. The ALJ concluded Dr. Leyba's opinions were "without substantial support from the other evidence of record, which obviously renders them less persuasive." AR. 703; *see also id*. at 704 ("Dr. Leyba's opinion regarding the claimant's mental limitations has not been provided substantial or controlling weight because it is not supported by the objective findings nor those of any other medical source."). Finally, the ALJ gave limited weight to Dr. Leyba's April 2015 letter noting Plaintiff needed accommodation at school because "this letter is addressed to his issues at school and does not pertain to social security and related to social security disability requirements." AR 703. Although the ALJ accounted for Plaintiff's PTSD and irritability by limiting him to occasional public contact and for his ADHD and concentration issues by limiting him to simple, repetitive work with additional

---

The ALJ herself gave "little weight" to these evaluators' opinions because neither examined Plaintiff nor reviewed the most recent evidence of record. AR 704. This Court is constrained to review the reasons asserted by the ALJ, and cannot accept Defendant's invitation to engage in post hoc rationalization. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

United States District Court
Northern District of California

supervision in learning new tasks, the ALJ found the record did not support any of the other limitations assessed by Dr. Leyba. AR 704.

Plaintiff argues the Commissioner applied incorrect legal standards to find Dr. Leyba's opinions as a treating physician were not entitled to controlling weight. Pl.'s Mot. at 4-14. Had Dr. Leyba's opinions regarding his mental and physical limitations been given the appropriate weight, Plaintiff contends the ALJ would have determined he met or equaled a Listing at Step Three of the sequential evaluation. *Id*. at 2-3.

3. Analysis

The ALJ erred in discounting Dr. Leyba's opinions about Plaintiff's mental health limitations because they are "without substantial support from the other evidence of record." AR 703. In so doing, the ALJ applied the incorrect standard. A treater's opinion does not need "substantial support" from the other evidence of record; it only needs to be "well supported" by "medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p. An opinion is "well supported" if there is "some reasonable support" for it. *Id*. There is "some reasonable support" for Dr. Leyba's opinions, notably her longitudinal observations and treatment of Plaintiff since 2012, as well as her review of Plaintiff's other treatment records (including Dr. Steh's neuropscychological evaluations (AR 1026-36, 1105-11), the VA's treatment of Plaintiff's physical ailments since 2010, and the VA's 2012 determination that Plaintiff had a service-connected disabling low-back condition (AR 223-25)). Her opinions are further supported by the multiple medications she and Dr. Chang prescribed for Plaintiff's mood, concentration, sleep, and pain.

To the extent the ALJ concluded Dr. Leyba's treatment notes did not support her opinion, she also erred. First, the ALJ erred in relying entirely on her own interpretation of Dr. Leyba's notes describing the mental status examinations. *But see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3) ("We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician . . . ."). If the

United States District Court
Northern District of California

ALJ felt the voluminous record did not support Dr. Leyba's uncontradicted opinions, which Dr. Leyba offered after treating Plaintiff for several years, the ALJ had a duty to fully develop the record and, at a minimum, ask Dr. Leyba to provide greater information regarding the basis for her opinions. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the "ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . . If the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example by subpoenaing the physicians or submitting further questions to them." (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ also could have subpoenaed Dr. Leyba or ordered additional testing. Second, the ALJ's summary of Dr. Leyba's mental status exams acknowledges that in the majority of the exams, Dr. Leyba noted complaints about concentration, anxiety, irritability, and sleep problems; many times noted Plaintiff had suicidal thoughts; and once noted Plaintiff experienced a dissociative episode. AR 697-98.[3] Although the mental status exams show that Plaintiff felt better on some days than others, on the whole, these support Dr. Leyba's opinion that Plaintiff had "marked" difficulties with memory and concentration. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms [of mental health issues] wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (because a person suffering from mental health impairments improves does not mean the person's impairments no longer affect ability to work). Dr. Steh's evaluation also supports Dr. Leyba's opinions, and suggests Plaintiff's performance is affected by his comfort level, which may be different in a work setting than a doctor's office. Dr.

---

[3] The Court does not adopt Defendant's description of these as "reveal[ing] many generally normal mental status examinations." Def.'s Mot. at 3; *id.* at 6 (referencing "many normal mental status examinations but for an irritable mood and some concentration problems" but failing to acknowledge exams repeatedly mentioned suicidal thoughts).

Leyba's opinions were "well supported" and the ALJ failed to give sufficient weight to the subjective aspects of Dr. Leyba's opinions. *See Embrey*, 849 F.2d at 421-22 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

The ALJ also erred in discounting Dr. Leyba's opinion regarding Plaintiff's pain-related limitations. The ALJ discounted that opinion because Dr. Leyba did not provide treatment for Plaintiff's back pain. On the contrary, Dr. Leyba repeatedly opined that Plaintiff's back pain was connected to his mental condition in multiple ways: the pain exacerbated his mental state, his mood disorder affected his pain perception, and he may be dealing with his emotional pain in a somatic manner. The record reflects that Dr. Leyba considered Plaintiff's pain to be an integral part of his mental health condition, and thus her treatment of Plaintiff included evaluating and attempting to address his pain to the extent it was a somatic expression and/or his mood disorder affected his perception of the pain. The fact the State agency physicians opined Plaintiff had no severe physical impairments therefore does not contradict Dr. Leyba's opinion that Plaintiff's mental state was contributing to his pain.

The ALJ's reasons for rejecting the opinion Dr. Leyba articulated in her April 2015 letter are also not clear and convincing. The ALJ discounted Dr. Leyba's opinion that Plaintiff needed accommodations when attending school four hours a day, four days per week on the sole basis it addressed issues at school rather than Plaintiff's functional abilities as related to his SSA application for disability. Dr. Leyba, based on her treatment and understanding of Plaintiff's condition, opined that Plaintiff could not perform adequately in a school setting on a part-time basis absent certain accommodations. In fact, even with accommodations, Plaintiff took a leave of absence from school and eventually stopped pursuing his degree because he did not feel able to keep up with his schoolwork. Such limitations might, logically, apply to Plaintiff's ability to perform adequately in a work setting on a full-time basis and thus be relevant to the SSA evaluation of disability.

United States District Court
Northern District of California

To the extent Dr. Leyba opined Plaintiff was "unemployable" (AR 703 (citing April 2014 letter)), however, the ALJ did not err in rejecting her opinion. The ultimate issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

In sum, the reasons the ALJ articulated for rejecting Dr. Leyba's opinions were not "clear and convincing." Plaintiff asks the Court to make a finding of presumptive disability rather than remand the action. Pl.'s Mot. at 14. The Court finds this case would benefit from further administrative proceedings to give the ALJ the opportunity to develop the record by obtaining additional information from Dr. Leyba or Dr. Steh, or requiring Plaintiff to undergo a mental health examination with an SSA consultant. As such, the Court declines to apply the credit as true doctrine. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

**B. Dr. Brandon**

In July 2014, Dr. Elizabeth Brandon, D.O., reviewed Plaintiff's back examination and complete Veterans Benefits Management System claim file and treatment records. AR 1111. The VA specifically asked Dr. Brandon to review the information and "comment on the functional impairment caused solely by the veteran's service-connected lumbar spine condition with bilateral lower extremity radiculopathy." *Id.* Dr. Brandon opined that based on Plaintiff's back condition,

> sedentary or semi sedentary work would be expected to be unrestricted. He demonstrates on exam severe limitation of back [range of motion] and has subjective complaints of radiculopathy. He continues to have a normal strength testing exam, normal reflexes, normal xray and no MRI imaging studies of the lumbar spine that would indicate the lumbar spine as being the primary source of the pathology limiting his functional status. Therefore, based on known objective findings and studies, there is no pathology identified beyond subjective complaints, the severity of which are inconsistent with known pathology of the area, that would restrict the Veteran's functional status in sedentary or semi sedentary occupations.

AR 1111-12. The ALJ did not address Dr. Brandon's opinion in her decision. Plaintiff argues this

failure to address or give any reasons for rejecting Dr. Brandon's opinion is reversible error. Pl.'s Mot. at 15.

Plaintiff argues that Dr. Brandon limits him to sedentary or semi sedentary work. *Id.* But Dr. Brandon merely opines that "sedentary or semi sedentary work would be expected to be unrestricted" – Dr. Brandon does not opine that Plaintiff could not perform light jobs with restrictions. AR 1111; *see also id*. at 1111-12 ("[T]here is no pathology identified beyond subjective complaints, the severity of which are inconsistent with the known pathology of the area, that would restrict [claimant's] functional status in sedentary or semi sedentary occupations."). As stated, Dr. Brandon's opinion does not support greater limitations than those assessed by the ALJ. The ALJ's failure to address Dr. Brandon's opinion is harmless error.

**C. Plaintiff's Credibility**

The ALJ found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not "entirely credible." AR 700. The ALJ did not make any findings of malingering, and therefore could reject Plaintiff's subjective complaints only by making specific credibility findings. *See* SSR 96-7p (credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."); *see also Thomas*, 278 F.3d at 958 (credibility finding must be properly supported by record and sufficiently specific to ensure reviewing court that ALJ did not "arbitrarily discredit" claimant's subjective testimony).

The ALJ made a number of specific credibility findings. First, the ALJ discounted Plaintiff's credibility because the daily activities Plaintiff described "are not limited to the extent that one would expect, given the complaints of disabling symptoms and limitations." AR 700. For example, the ALJ focused on Plaintiff's report that he had limited difficulty attending to his personal care needs, can make simple meals, goes outside daily, drives a car, handles money and pays bills, and attends school. *Id.* While an ALJ should not penalize a claimant for striving to perform necessary activities of daily living (*see, e.g., Long v. Colvin*, 2015 WL 971198, at *8 (N.D. Cal. Mar. 3, 2015 (citing Ninth Circuit cases)), the ALJ focused on the fact Plaintiff

United States District Court
Northern District of California

attended school for several years, out of his home and in the presence of others, as a reason for discrediting Plaintiff's testimony that he could not leave the house and that being around others was difficult. The physical and mental abilities, and social interactions, required to perform the activities Plaintiff admitted to participating in, the ALJ opined, "are the same as those necessary for obtaining and maintaining employment." AR 700. Similarly, the ALJ also cited the fact that Plaintiff's PTSD did not interfere with his work while in the Army, and that the VA did not base his disability rating on his mental condition. AR 701. These are specific credibility findings that are supported by the record.

Second, the ALJ discounted Plaintiff's credibility because evidence indicated he stopped working for reasons unrelated to his disability: he was discharged from the military after he was unable to pass a physical and because the military was downsizing. AR 700. Plaintiff also testified he did not look for other work not because he was disabled, but because he planned to attend school, which he did for a time despite concentration problems. AR 700. The ALJ weighed Plaintiff's conflicting testimony and discredited Plaintiff's argument he stopped working because of his claimed disability. This is a rational interpretation of the evidence. *See Magallanes*, 881 F.2d at 750.

Third, the ALJ discounted Plaintiff's credibility because there was no objective diagnostic explanation for the level of pain he claimed to be experiencing, and because he responded well to treatment. *See* AR 700 (the record showed "normal lumbar x-ray and no medical explanation for his pain, with chiropractic treatment helping his symptoms"; Plaintiff was treated conservatively with medication management and therapy and treatment was "generally successful in controlling" his symptoms). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ nevertheless is permitted to consider the lack of evidence as one factor in the overall credibility determination. *Id.* at 681. Here, the ALJ only used the lack of evidence as one factor, and thus did not err. The

responsiveness to treatment also is an acceptable ground for discounting Plaintiff's credibility. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (evidence claimant responded well to treatment proper basis for rejecting testimony to contrary).

While Plaintiff may disagree with the ALJ's weighing of the evidence and the undersigned may have reached a different conclusion, this is not a basis for reversing the ALJ's decision. *See Magallanes*, 881 F.2d at 750 (where evidence is susceptible to more than one rational interpretation, court must uphold the ALJ's decision).

**D. Resolving Conflict with Dictionary of Occupational Titles**

Because the Court orders remand based on the ALJ's failure to properly weigh Dr. Leyba's opinions, it does not reach Plaintiff's final argument that the ALJ failed to resolve a conflict with the Dictionary of Occupational Titles. *See* Pl.'s Mot. at 23.

**CONCLUSION**

The ALJ erred by failing to give clear and convincing reasons for rejecting Dr. Leyba's opinions regarding Plaintiff's limitations. The Court accordingly **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **GRANTS IN PART** Defendant's Cross-Motion for Summary Judgment. The case is remanded for further proceedings. On remand, the ALJ shall obtain additional information from Dr. Leyba and/or Dr. Steh, and may require Plaintiff to undergo a mental health evaluation.

The Court will enter a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

Dated: January 26, 2017

MARIA-ELENA JAMES
United States Magistrate Judge